J-S86021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GARRETT J. GAETANO | |
| Appellant | No. 449 WDA 2016 |

Appeal from the Judgment of Sentence February 25, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013376-2015

BEFORE: GANTMAN, P.J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED APRIL 4, 2017**

Garrett J. Gaetano appeals from the February 25, 2016 judgment of sentence entered in the Allegheny County Court of Common Pleas. We reverse the judgment of sentence and remand this case to the trial court to determine whether Gaetano's consent to the blood test was validly obtained in light of ***Birchfield v. North Dakota***, 136 S.Ct. 2160 (2016), which was decided after the trial court's decision in this case.

The trial court set forth the following facts:

> The evidence presented established that at 3:09 a.m., on September 7, 2015, Sgt. Gary Watkins was on routine patrol in the Borough of Castle Shannon in Allegheny County. He was travelling North on State Route 88 when he noticed [Gaetano's] vehicle in the Southbound lane with both passenger side tires on the shoulder of the roadway

---

[*] Former Justice specially assigned to the Superior Court.

with tires over the fog line. [Gaetano's] vehicle appeared to [be] travelling in excess of the speed limit so Sgt. Watkins turned around in order to follow [Gaetano] to pace the vehicle to determine his speed. [Gaetano] made a left turn on Hamilton Road and traveled up Hamilton by driving up the middle of the road, his vehicle in both lanes of travel. There were no obstructions or road conditions that would cause [Gaetano] to drive his vehicle taking up both lanes of travel. Sgt. Watkins then activated his lights and conducted a traffic stop.

Sgt. Watkins approached [Gaetano's] vehicle and detected a strong odor of alcohol emanating from [Gaetano]. He asked [Gaetano] if he had been drinking alcohol, which [Gaetano] denied. After [Gaetano's] performance on field sobriety tests Sgt. Watkins came to the opinion that [Gaetano] was under the influence of alcohol and incapable of safely operating a motor vehicle.

Opinion, 4/14/16, at 2-3 ("1925(a) Op."). Sergeant Watkins testified that, as he was arresting Gaetano, he "requested that [Gaetano] submit to a blood draw, and I said if you refuse to submit to that blood draw, your license will be suspended and you will suffer enhanced penalties through PennDOT." N.T., 2/25/16, at 36. On cross-examination, Sergeant Watkins also testified as follows:

[Defense Counsel:] I'm trying to make sure the record is clear that in this particular case you handcuffed him, then you said you asked him to give blood and told him that the consequence of a refusal was a license suspension and enhanced penalties through PennDOT?

[Sgt. Watkins:] Yes.

[Defense Counsel:] Okay. At some point in time, though, didn't Gaetano start to – didn't he ask you if he could give breath?

[Sgt. Watkins:] I recall -- I believe so.

- 2 -

[Defense Counsel:] All right. And I'm just trying to move along here. After he asked for breath, you would have told him what? No, that's not your call, or something to that effect?

[Sgt. Watkins:] Correct.

[Defense Counsel:] Didn't you then remind him that the penalties for a refusal to the test you were asking for was a license suspension and enhanced penalties?

[Sgt. Watkins:] Yes.

[Defense Counsel:] Okay. And based upon the review of the tape, without going through it, during your encounter with Gaetano before you transported him from the scene, you would have said words to that effect to him about three times total?

[Sgt. Watkins:] And the only reason why I say that is if they say something --

[Defense Counsel:] Okay.

[Sgt. Watkins:] -- you know? So --

[Defense Counsel:] I do.

[Sgt. Watkins:] -- if he said something afterwards and I just reiterated. Because if I remember, in this case I was close to reading the entire DL-26, because he made mention that he didn't want a needle and he wanted blood (sic), it's not your choice, I have to inform you that I'm taking you for blood and what you cited there.

[Defense Counsel:] All right. So just so the record's clear, you indicate that sometimes you have to reiterate it if there's some kind of questioning from a suspect?

[Sgt. Watkins:] Yes.

[Defense Counsel:] Okay. And if I understand what you're saying, you sometimes will get to the point where you will have to read the full DL-26 when you suspect this person's about to refuse? I don't want to put words in your mouth, but I think that's what you're saying.

[Sgt. Watkins:] The only time I read the DL-26 is, number one, if they do not answer me --

[Defense Counsel:] Okay.

[Sgt. Watkins:] -- or, number two, if they flat out refuse.

[Defense Counsel:] All right. And with Gaetano, you're saying you were close to having to read the full DL-26?

[Sgt. Watkins:] If he would have pushed the issue further as far as to go give breath --

[Defense Counsel:] Right.

[Sgt. Watkins:] - I would have read the DL-26.

[Defense Counsel:] Okay. But instead, as a result of his interaction with you and your interaction with him, you told him -- you had to tell him about three times that the consequence of a refusal was a loss of his license and enhanced penalties?[1]

[Sgt. Watkins:] Correct.

[Defense Counsel:] At the hospital did anybody reiterate any warnings to him?

[Sgt. Watkins:] No.

---

[1] In its 1925(a) opinion, the trial court stated that Sergeant Watkins read to Gaetano the *Commonwealth, Dep't of Trans. v. O'Connell*, 555 A.2d 873 (Pa. 1989), warnings. The *O'Connell* warnings are contained on the DL-26 form, which provides that if a person refuses to consent to a blood test, his or her license could be suspended for at least one year and that, if convicted of violating 75 Pa.C.S. § 3802(a), he or she will face more severe penalties because of the refusal. However, as outlined above, Sergeant Watkins testified that he informed Gaetano, "[Y]our license will be suspended and you will suffer enhanced penalties through PennDOT," and did not read the full DL-26 form to Gaetano.

*Id.* at 42-45. Gaetano was transported to St. Clair Hospital. While his blood was being drawn he told Sergeant Watkins, "I fucked up." 1925(a) Op. at 3. Gaetano's blood-alcohol content was determined to be .205%. *Id.*

On January 6, 2016, Gaetano filed an omnibus pre-trial motion, which included a motion to suppress the results from the blood test, arguing that his consent was involuntary because it was given only after he was informed he would face enhanced penalties if he refused to consent to the blood test.

On February 25, 2016, the trial court held a hearing on Gaetano's pre-trial motion and conducted a non-jury trial. The court denied Gaetano's pre-trial motion and found Gaetano guilty of driving under the influence ("DUI") – highest rate, DUI – general impairment, and failing to drive on right side of roadway.[2] That same day, the trial court sentenced Gaetano to 3 days' incarceration and 6 months' probation. Gaetano filed a timely notice of appeal.

On appeal, Gaetano raises the following issue:

> WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OF [GAETANO'S] BLOOD ALCOHOL CONTENT WHERE THE WARNINGS PROVIDED TO [GAETANO] PRIOR TO HIS CONSENT TO PROVIDE HIS BLOOD, FOR THE PURPOSE OF TESTING, CAME AFTER HE WAS INFORMED THAT IF HE REFUSED, HE FACED ENHANCED PENALTIES?

Gaetano's Br. at 4.

---

[2] 75 Pa.C.S. §§ 3802(c), 3802(a)(1), and 3301(a), respectively.

Gaetano maintains that his consent was not constitutionally obtained because he was informed that if he refused the blood test he would face "enhanced penalties." He contends that, although Sergeant Watkins stated the "enhanced penalties" were through PennDOT, Gaetano, who was intoxicated and being arrested at the time, likely did not differentiate between enhanced criminal penalties and enhanced penalties through PennDOT.

The United States Supreme Court has established that because "the taking of a blood sample" is a search within the meaning of the Fourth Amendment of the United States Constitution, absent an applicable exception, police officers may not compel the taking of a blood sample of a defendant without a search warrant. *Birchfield*, 136 S.Ct. at 2173, 2185.[3] After concluding that "the search incident to arrest doctrine does not justify the warrantless taking of a blood sample," *id.* at 2185, the *Birchfield* Court considered whether implied-consent laws, in which cooperation with blood-alcohol testing is "a condition of the privilege of driving on state roads," could provide an exception to the warrant requirement. *Id.* at 2168, 2185-86. The Court held that, although implied-consent laws that impose civil penalties and evidentiary consequences for refusing to consent are

---

[3] In contrast, the Supreme Court also held that police officers may administer a breath test without a warrant as a search incident to arrest. *Birchfield*, 136 S.Ct. at 2185.

constitutional,[4] implied-consent laws that "impose criminal penalties" for refusing to consent to a blood test are unconstitutional because "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 2185-86.[5]

Section 1547 of the Pennsylvania Vehicle Code, commonly referred to as the Implied Consent Law, provides that a person's license may be suspended if he or she refuses a requested blood test. 75 Pa.C.S § 1547(b) ("If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person . . . ."). The Implied

---

[4] The Court in *Birchfield* stated:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. *See, e.g., [Missouri v.] McNeely,* []133 S.Ct. [1552,] 1565–1566 [(2013)] (plurality opinion); [*South Dakota v. Neville*, 459 U.S. 553, 560, 103 S.Ct. 916, 920 (1983)]. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.

136 S.Ct. at 2185.

[5] The trial court's Rule 1925(a) opinion preceded the decision in *Birchfield*. However, where a United States Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004).

Consent Law further provides that the police officer shall inform the person that:

> (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing; and

> (ii) if the person refuses to submit to chemical testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S. § 1547(a)(2). Section 3804(a) of the Vehicle Code provides increased criminal penalties if a person refuses a blood test and is later convicted of violating section 3802(a)(1). *See* 75 Pa.C.S § 3804(c) (providing sentencing ranges for "[a]n individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d)," including that, for a first offense, the individual shall be sentenced to, among other things, "imprisonment of not less than 72 consecutive hours"). Accordingly, in Pennsylvania, although a driver cannot be convicted of a separate offense for refusing to consent to a blood test, the driver faces increased penalties if later convicted of certain DUI offenses. *See Commonwealth v. Evans*, --- A.3d ----, 2016 Pa.Super. 293, *7-8 (filed Dec. 20, 2016); *Commonwealth v. Giron*, --- A.3d ----, 2017 Pa.Super. 23, *4 (Jan. 31, 2017) (finding sentence under 75 Pa.C.S. §§ 3803-04 for defendant who refused a blood test illegal following *Birchfield*).

Gaetano argues that his consent to the blood draw was unconstitutionally obtained. In particular, he contends that because he

consented only after being informed he would face "enhanced penalties" if he refused, his consent was involuntary and thus invalid.

Following **Birchfield**, the police may validly obtain consent based on a warning of a license-suspension penalty, because the Supreme Court made clear that such penalty may be constitutionally imposed. In contrast, where consent is obtained following a warning that refusal will subject a motorist to "the pain of committing a criminal offense," **Birchfield**, 136 S.Ct. at 2186, a penalty that in fact may **not** be imposed, that consent may be rendered involuntary. **See Evans**, --- A.3d ----, 2016 Pa.Super. 293, *8 (finding officer's warning "partially inaccurate" where officer informed appellant of increased criminal penalties, and vacating judgment of sentence and remanding for re-evaluation of consent based on totality of circumstances); **cf. Birchfield**, 136 S.Ct. at 1286 (remanding to state court to determine whether appellant voluntarily consented to blood test where appellant had been informed submission to test was required, his license was suspended, and he was fined in administrative proceeding).

The Pennsylvania Supreme Court has stated:

> In determining the validity of a given consent, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The standard for measuring the scope of a person's consent is based on an objective evaluation of what a reasonable person would have understood by the exchange between the officer and the person who gave the consent. Such

> evaluation includes an objective examination of the maturity, sophistication and mental or emotional state of the defendant[.] Gauging the scope of a defendant's consent is an inherent and necessary part of the process of determining, on the totality of the circumstances presented, whether the consent is objectively valid, or instead the product of coercion, deceit, or misrepresentation.

*Commonwealth v. Smith*, 77 A.3d 562, 573 (Pa. 2013) (internal citations and quotation marks omitted).

In this case, a crucial component of the "totality of the circumstances" surrounding Gaetano's consent is the warning given by Sergeant Watkins concerning the consequences of refusal. Unlike the warning we recently addressed in *Evans*, --- A.3d ----, 2016 Pa.Super., *8, Sergeant Watkins did not expressly state that Gaetano would face enhanced **criminal** penalties if he refused consent. Instead, he referenced "enhanced penalties through PennDOT." N.T., 2/25/16, 36. The record does not reveal what those enhanced penalties might be, beyond license suspension. In *Evans*, after concluding that the more explicit warning there was "partially inaccurate," we "remand[ed] the case to the trial court to 'reevaluate [Appellant's] consent . . . [, based on] the totality of all the circumstances . . . [and] given the partial inaccuracy of the officer's advisory.'" --- A.3d ----, 2016 Pa.Super., *8 (quoting *Birchfield*, 136 S.Ct at 2186) (alterations in

original).  Here, we must do the same, recognizing that Sergeant Watkin's warning was less blatantly inaccurate than the warning in **Evans**.[6]

Judgment of sentence reversed.  Case remanded with instructions. Jurisdiction relinquished.

President Judge Gantman joins in the Memorandum.

President Judge Emeritus Stevens files a Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/4/2017</u>

_____

[6]  Gaetano was stopped before the Supreme Court's decision in **Birchfield**.  At the time of the stop, therefore, it would have been accurate for Sergeant Watkins to have informed Gaetano that, under Pennsylvania law, he faced increased criminal penalties if he refused to consent to the blood draw.